STATE OF NORTH CAROLINA v. LARRY HAMBY

STATE OF NORTH CAROLINA v. WILLIAM DAVID TAYLOR

No. 7216SC63

(Filed 20 September 1972)

Criminal Law § 155.5— failure to docket appeal in time — ineffective order of extension — consideration of appeal on its merits

> Where a judge other than the trial judge extended the time for service of the case on appeal and the extension provided for a time longer than that allowed by the Rules of Practice, the appeal of defendant in a prosecution for conspiracy to murder was subject to dismissal; however, the court did consider the appeal on its merits and found no error in either the admission of evidence or the charge to the jury. Court of Appeals rules 50, 5.

APPEAL by defendants from *Canaday, Judge,* 1 June 1971 Session of Superior Court held in ROBESON County.

The defendant Taylor was charged in a bill of indictment, proper in form, together with Nellie Richardson, Larry Hamby and William Edward Powers, with a conspiracy to kill and murder Floyd Ray Richardson.

Only Hamby and Taylor were tried. The record does not reveal what disposition was made as to Nellie Richardson and William Edward Powers.

We are concerned on this appeal solely with the defendant Taylor. The defendant Hamby was permitted by this court to

withdraw his appeal after Judge Clark had made certain factual findings as to the voluntariness of his desire to withdraw it.

The evidence for the State tended to show that Taylor and Nellie Mae Richardson had gone to school together, that for two years "she and he became very personally involved." In 1958, he stopped seeing her and in 1959 she married Floyd Ray Richardson (Floyd). In 1964, Taylor began seeing Nellie again. Nellie and Floyd had separated on at least three occasions, and during the year 1970, Taylor and Nellie decided they would hire somebody to kill Floyd. Taylor mentioned this to a fellow employee, James Edward Powers. Shortly thereafter, Taylor went to Powers' apartment and there met Larry Hamby. Taylor told Hamby that he wanted to have Floyd killed and Hamby told Taylor he could get the job done for six thousand dollars. Taylor agreed to pay the six thousand dollars and paid Hamby eleven hundred dollars at that time. Thereafter, on several different occasions Taylor made additional payments to Hamby, totaling thirty-one hundred dollars. Hamby stated he had given Jack Gibson, a State's witness, the sum of three hundred and fifty dollars after Gibson had gone with Hamby to see Taylor on two occasions. In September 1970, Hamby called Taylor and told him that "someone had squealed" and that he, Hamby, would return his money but that it would take him a while to raise the thirty-one hundred dollars and get it back to him. Hamby also told S.B.I. Agent Johnson, a State's witness, that he "saw an easy way to make some money and that he had no intentions at any time of killing anyone."

The defendant Taylor offered evidence tending to show that he had a good reputation in the community in which he lived.

Defendant Hamby offered evidence tending to show that Taylor told him that he, Taylor, was going with this girl and wanted to get rid of her husband. Hamby told Taylor that he would try to find somebody who would do the job. Hamby testified that he did not intend to kill anybody and that "(m)y purpose in taking the money from Mr. Taylor to start with was that it was there to be gotten. I was up tight for some money and saw an opportunity to make it, so I did. My intent to take the money was just wholesale. He was putting up money to get somebody killed and I knew no way to get the man. If he would keep turning over money, I was for it." Hamby stated

he introduced State's witness Jack Gibson to Taylor as the man who was going to do the killing, and saw Taylor give Gibson two hundred and fifty dollars, which Gibson later divided with Hamby. About two weeks later, Hamby and Gibson divided an additional four hundred and fifty dollars that had been given to them by Taylor. About one week prior to their arrest, Hamby met with Taylor and Taylor told him he wanted to call the whole thing off, and Hamby replied, "O.K., I'll try to get your money back to you."

The jury returned verdicts of guilty as to both defendants, Hamby and Taylor, and from the judgment of imprisonment for not less than five nor more than seven years, the defendant Taylor appealed. L. J. Britt, Sr., represented the defendant Taylor at the trial in superior court, and W. Earl Britt represented the defendant Taylor on this appeal.

*Attorney General Morgan and Associate Attorney Ricks for the State.*

*W. Earl Britt for defendant appellant.*

MALLARD, Chief Judge.

Judge Canaday tried the case and signed appeal entries including an order extending the time for service of the case on appeal and countercase. The case on appeal was apparently not served within the time allowed in Judge Canaday's order, and the defendant sought and obtained an order from Judge Peel extending the time in which to serve the case on appeal. Although Judge Peel allowed this order, under Rule 50 of the Rules of Practice in the Court of Appeals, only the trial judge may extend the time for service of the case on appeal, and this order of Judge Peel was therefore ineffective.

The appeal is subject to be dismissed for failure to docket the record on appeal in this court within the time required by the rules. The judgment appealed from was entered on 3 June 1971. The appeal was docketed on 3 November 1971. Under Rule 5 of the Rules of Practice in this court, it is provided that if the appeal is not docketed within ninety days after the date of the judgment, the trial tribunal may, for good cause, "extend the time not exceeding sixty days, for docketing the record on appeal." On 2 August 1971, Judge Peel entered an order in which he extended the time for docketing this appeal to "sixty days

after 3 September 1971." This exceeded the authority of Judge Peel. By the rules he was authorized to extend the order for sixty days after the expiration of ninety days from the date of the judgment appealed from. It should be noted that the time for docketing is stated in "days," not "months." From 3 June, the date of the judgment appealed from, to 3 November, the date of the docketing, there are three months that have thirty-one days, to-wit: July, August and October. While Wednesday, 3 November 1971, was five "months" after 3 June 1971, it was 153 days after the date of the judgment appealed from and the docketing of the appeal on that date was too late under the rules of this court. However, we do not dismiss the appeal but consider it on the merits.

The evidence for the State revealed that Taylor and Floyd's wife, Nellie, a co-defendant, first conspired with each other to kill and murder Floyd. After that, the defendant Hamby entered the conspiracy. Taylor paid out thirty-one hundred dollars to have Floyd killed, but before the murder was accomplished, the authorities learned of the conspiracy.

We have carefully considered the defendant's assignments of error and find no prejudicial error either in the admission of evidence or the charge of the court to the jury. We hold that the defendant Taylor has received a fair trial, free from prejudicial error.

No error.

Judges MORRIS and PARKER concur.